David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
William Bandettini, SBN 349228
william@dllawgroup.com
**DL LAW GROUP**
1000 3rd Street, Suite 1605
San Francisco, CA 94158
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

Attorneys for Plaintiff,
M.R.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.R. | Case No. |
| Plaintiff, | **PLAINTIFF M.R.'S COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA); BREACH OF FIDUCIARY DUTY; ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; AND ATTORNEYS' FEES AND COSTS** |
| v. | |
| BLUE CROSS OF CALIFORNIA dba ANTHEM BLUE CROSS; and DOES 1 through 10, | |
| Defendants. | |

Plaintiff, M.R. herein sets forth the allegations of this Complaint against Defendants BLUE CROSS OF CALIFORNIA dba ANTHEM BLUE CROSS ("Anthem"); and DOES 1 through 10.

//

//

//

//

//

//

1

**COMPLAINT**                                                                                          **CASE NO.**

## PRELIMINARY ALLEGATIONS

### JURISDICTION

1.    Plaintiff brings this action for relief pursuant to Section 502(a)(1)(B) and Section 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1132(a)(1)(B). This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA Section 502(e) and (f), 29 U.S.C. Section 1132(e), (f), and (g) and 28 U.S.C. Section 1331 as it involves a claim made by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. Section 1331 as this action involves a federal question.

2.    This action is brought for the purpose of recovering benefits under the terms of an employee benefit plan, enforcing Plaintiff's rights, and for the purpose of seeking equitable relief as set forth below and may be fashioned by the court in its discretion under the terms of an employee benefit plan.

3.    Plaintiff seeks relief, including but not limited to: past mental health benefits in the correct amount related to Defendant's improper denial of Plaintiff's claim; prejudgment and post judgment interest; general and special damages; attorneys' fees and costs; surcharge; and other equitable relief that is appropriate based on the alleged misconduct at issue herein.

### PARTIES

4.    Plaintiff M.R. is, and at all times relevant was, a resident of California. At all relevant times, M.R. participated in the Anthem Platinum PPO 15/250/10% ("the Plan"), an employee welfare benefit plan within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1), sponsored by her employer.

5.    Mental Health benefits under the Plan were at all relevant times administered by Defendant BLUE CROSS OF CALIFORNIA dba ANTHEM BLUE CROSS ("Anthem").

6.    Anthem is a health insurance provider authorized to transact and currently transacting the business of insurance in the State of California.

2

**COMPLAINT**                                                                                    **CASE NO.**

7.    At all relevant times, the Plan was an insurance plan that offered, *inter alia*, mental health benefits to employees and their beneficiaries, including Plaintiff. This action involves mental health claims denied by the Plan's mental health claim administrator.

**FACTS**

8.    The Plan guarantees, warrants, and promises "Mental Health Services" for members and their beneficiaries, including but not limited to: health care services, mental health care, and treatment at issue herein.

9.    L.M. is M.R.'s daughter, and was, at all relevant times, a member, participant, and a beneficiary of the Plan.

10.    At all relevant times, the Plan was in full force and effect.

11.    The Plan guarantees, promises, and warrants benefits for medically necessary covered health care services.

12.    The Plan defines "Medically Necessary" health care services as:

Medically Necessary shall mean health care services that a Physician, exercising professional clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:

- In accordance with generally accepted standards of medical practice,
- Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease,
- Not primarily for the convenience of the patient, Physician or other health care Provider, and
- Not more costly than an alternative service, including the same service in an alternative setting, or sequence of services that is medically appropriate and is likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's injury, disease, illness or condition.

13.    The Plan provides coverage for the Medically Necessary treatment of Mental Health and Substance Use Disorder. As the Plan states: "This coverage is provided according to the terms and conditions of this Plan that apply to all other medical conditions, except as specifically stated in this section, and is not limited to short-term or acute treatment."

**COMPLAINT**                                                                                    **CASE NO.**

14. The Plan expressly covers, as an Inpatient Service, "Residential treatment, which is specialized 24-hour treatment in a licensed Residential Treatment Center."

15. The Plan defines a "Residential Treatment Center/Facility" as "An Inpatient Facility that provides multidisciplinary treatment for Mental Health or Substance Use Disorder conditions. The Facility must be licensed as a residential treatment center in the state in which it is located, satisfy our accreditation requirements, and be approved by us."

16. The Federal Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA") requires that group health plans offering mental health and substance use disorder benefits not impose treatment limitations on those benefits that are more restrictive than the treatment limitations imposed on medical and surgical benefits in the same classification.

17. Consistent with MHPAEA, the Plan states that it "may not impose Deductibles, Copayment, Coinsurance, and out of pocket expenses on Mental Health and Substance Use Disorder benefits that are more restrictive than Deductibles, Copayment, Coinsurance and out of pocket expenses applicable to substantially all medical and surgical benefits in the same classification."

18. MHPAEA further requires that plans and their agents make available, upon request, the comparative analyses and other documents showing the processes, strategies, evidentiary standards, and other factors used to apply a nonquantitative treatment limitation. The Plan likewise represents that "Medical Necessity criteria and other Plan documents showing comparative criteria, as well as the processes, strategies, evidentiary standards, and other factors used to apply an NQTL are available upon request."

19. L.M. was diagnosed with, *inter alia*, Posttraumatic Stress Disorder, Major Depressive Disorder, Unspecified Anxiety Disorder, Unspecified Feeding or Eating Disorder, Parent-Child Relational Problem, Borderline Personality Disorder, Oppositional Defiant Disorder, Cannabis Use Disorder, Alcohol Use Disorder, and Attention-Deficit/Hyperactivity Disorder.

20. L.M. experienced anxiety and depression beginning at a young age and began engaging in self-harm and experiencing suicidal ideation as a young adolescent.

21. L.M. has a history of trauma and abuse.

COMPLAINT                                                                    CASE NO.

22. L.M. also developed a history of substance use, including nicotine, marijuana, oxycodone, and alcohol.

23. L.M. ingested alcohol and an unknown quantity of oxycodone and cut her wrists and thigh, and was taken to the emergency department at Providence Milwaukie Hospital, where she was treated for, *inter alia*, acute opiate overdose, acute alcohol poisoning, and self-inflicted lacerations. She returned to the emergency department days later.

24. Following her hospitalizations, and at the recommendation of her treatment providers, L.M. was admitted to Evoke Therapy Programs, a wilderness therapy program, in June 2024.

25. Upon L.M.'s discharge from Evoke, her treating providers recommended that she transition directly to a residential treatment center rather than return home.

26. Despite ongoing treatment attempts, including hospitalization, medications, and therapy, L.M.'s symptoms persisted, and she required longer-term residential mental health treatment, first at New Haven Residential Treatment Center ("New Haven") and then at ROOTs Transition ("ROOTs"), as set forth below.

**Anthem's Denial of L.M.'s Treatment at Solacium New Haven**

27. At the recommendation of her treatment providers, L.M. was admitted to New Haven Residential Treatment Center, also known as Solacium New Haven ("New Haven"), a residential treatment center located in Utah.

28. At all times relevant, L.M.'s treatment at New Haven was medically necessary, based upon the reasoned medical opinions of her treaters.

29. Plaintiff filed claims for mental health benefits pursuant to the terms of the Plan for L.M.'s treatment at New Haven.

30. Anthem denied Plaintiff's claims for L.M.'s treatment at New Haven on the purported basis that residential treatment was "not medically necessary."

31. In denying the claims, Anthem stated that "we reviewed this request using a guideline called the CASII Level 5 (Child and Adolescent Service Intensity Instrument)," while

5

**COMPLAINT**                                                                                          **CASE NO.**

simultaneously directing Plaintiff to call for a copy of the "MCG Guidelines," rendering it unclear which clinical criteria Anthem actually used in reviewing L.M.'s care.

32.    Anthem's denial letters were templated, conclusory, and did not communicate a rationale addressing L.M.'s specific circumstances or the clinical judgment of her treating providers.

33.    Plaintiff timely appealed Anthem's denials of L.M.'s claims for treatment at New Haven.

34.    Not only were Anthem's denials unreasonable in light of the obvious medical necessity for L.M.'s ongoing mental health care, but the denials also violated MHPAEA, which alone provided a basis for approving all of the care for L.M. that is at issue herein.

35.    L.M.'s services were medically necessary, and her treatment at New Haven met all the requirements necessary for coverage under the Plan.

36.    As a result of Anthem's denials, Plaintiff was forced to pay for L.M.'s care and treatment at New Haven from her own personal funds.

37.    Plaintiff has exhausted all administrative remedies regarding the denial of L.M.'s mental health benefits for her treatment at New Haven.

### Anthem's Denial of L.M.'s Treatment at ROOTs

40.    Despite ongoing treatment, L.M.'s symptoms persisted, and at the recommendation of her treatment providers, L.M. was transferred from New Haven and admitted to ROOTs Transition ("ROOTs"), a residential treatment center.

41.    At all times relevant, L.M.'s treatment at ROOTs was medically necessary, based upon the reasoned medical opinions of her treaters.

42.    Plaintiff filed claims for mental health benefits pursuant to the terms of the Plan for L.M.'s treatment at ROOTs.

43.    Anthem initially authorized L.M.'s treatment at ROOTs, determining that L.M.'s residential treatment was medically necessary under the Plan.

**COMPLAINT**                                                                          **CASE NO.**

44. However, after approximately six weeks, Anthem denied Plaintiff's ongoing claims for L.M.'s treatment at ROOTs on the purported basis that residential treatment was "not medically necessary."

45. Plaintiff timely appealed Anthem's denial of L.M.'s claims for treatment at ROOTs.

46. On appeal, Anthem partially overturned its denial for approximately ten days of treatment and approved that care as medically necessary.

47. Notwithstanding its approval of that care, Anthem grossly underpaid the approved claim, reducing payment for authorized dates of service by applying a purported "benefit maximum," even though the Plan's Schedule of Benefits contains no limit on the number of days of residential treatment eligible for coverage.

48. Anthem continued to deny Plaintiff's remaining claims for L.M.'s treatment at ROOTs as "not medically necessary," using essentially the same templated denial language.

49. Plaintiff timely appealed Anthem's continued denial of L.M.'s claims for treatment at ROOTs.

50. Anthem upheld its denial of L.M.'s claims for treatment at ROOTs, stating that this was its final decision.

51. Not only were Anthem's denials unreasonable in light of the obvious medical necessity for L.M.'s ongoing mental health care, but the denials also violated MHPAEA, which alone provided a basis for approving all of the care for L.M. that is at issue herein.

52. L.M.'s services were medically necessary, and her treatment at ROOTs met all the requirements necessary for coverage under the Plan.

53. As a result of Anthem's denials and underpayment, Plaintiff was forced to pay for L.M.'s care and treatment at New Haven and ROOTs from her own personal funds.

54. Plaintiff has exhausted all administrative remedies regarding the denial of L.M.'s mental health benefits for her treatment at ROOTs.

///

///

**COMPLAINT**                                                                                           **CASE NO.**

**CLAIMS FOR RELIEF**
**FIRST CAUSE OF ACTION**
**Recovery of Benefits Due Under an ERISA Benefit Plan**
**(Against BLUE CROSS OF CALIFORNIA dba ANTHEM BLUE CROSS; and DOES 1-10; Enforcement and Clarification of Rights, Prejudgment and Post Judgment Interest, and Attorneys' Fees and Costs, Pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B))**

55.     Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

56.     ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due under the terms of the plan and to enforce Plaintiff's rights under the terms of a plan.

57.     At all relevant times, Plaintiff and her daughter L.M. were insured under the health care plan at issue herein, and Plaintiff's daughter, L.M., met the covered health services and medical necessity criteria for treatment required under the terms and conditions of the Plan.

58.     By denying Plaintiff's mental health claim, Defendants have violated, and continue to violate, the terms of the Plan, the terms of ERISA, and Plaintiff's rights thereunder.

59.     The provisions of an ERISA plan should be construed so as to render none nugatory and to avoid illusory promises.

**SECOND CAUSE OF ACTION**
**Breach of Fiduciary Duty Under ERISA § 502(a)(3), 29 U.S.C. Section 1132(a)(3)**
**(against Defendants BLUE CROSS OF CALIFORNIA dba ANTHEM BLUE CROSS; and DOES 1-10)**

60.     Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

61.     At all material times herein, Defendants, and each of them, were fiduciaries with respect to their exercise of authority over the management of the Plan, disposition of Plan assets, and administration of the Policy.

62.     Plaintiff asserts that a claim for benefits due under the Policy does not provide her with an adequate remedy at law in light of Defendants' continuing course of conduct in violating the terms of the Policy and applicable law as described below.

8

COMPLAINT                                                                                   CASE NO.

63.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires fiduciaries to discharge their duties solely in the interests of employee benefit plan participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the plan.

64.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires fiduciaries to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

65.    ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires fiduciaries to discharge their duties in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA.

66.    In committing the acts and omissions herein alleged, Defendants breached their fiduciary duties in violation of ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A)(B) and (D).

67.    At all material times herein, Defendants violated these duties by, *inter alia*, the following:

   A.  Consciously, unreasonably, intentionally, and without justification, failing to address the points Plaintiff raised in her appeals, thereby denying Plaintiff the full and fair review required under ERISA;

   B.  Consciously, unreasonably, intentionally, and without justification, failing to disclose to plan participants which "level of care guidelines" were actually used in reviewing L.M.'s claims, referencing both the CASII and the MCG Guidelines in the same denials, and applying guidelines that are unfair and biased against approving claims for residential treatment such as are at issue herein, and that do not reflect reasonable standards in the medical community;

   C.  Consciously, unreasonably, intentionally, and without justification, violating MHPAEA, which specifically requires that health care plans not impose treatment limitations on mental health and substance use disorder benefits that are more

9

COMPLAINT                                                                    CASE NO.

restrictive than those imposed on medical and surgical benefits in the same classification, and failing to provide the comparative analysis Plaintiff requested;

D. Consciously and unreasonably failing to investigate all bases upon which to pay and honor Plaintiff's claim, and related claims and/or similar claims, for benefits, and consciously and unreasonably failing to investigate all bases to support coverage fairly and in good faith and refusing to give Plaintiff's interests or the interests of the Plan at least as much consideration as they gave their own;

E. Consciously and unreasonably asserting improper bases for denying full payment of Plaintiff's claim, and related claims and/or similar claims, for mental health care benefits;

F. Consciously and unreasonably using unknown and inconsistent benefit calculations to underpay claims, including reducing payment for authorized dates of service by applying a purported "benefit maximum" with no basis in the Plan's Schedule of Benefits, with no explanation of its payment methodology;

G. Consciously and unreasonably interpreting the Plan in a manner designed to deny and minimize benefits and in a manner that thwarts the reasonable expectations of the Plan's beneficiaries and participants to maximize its own profits and minimize the benefits that it pays claimants;

H. Consciously and unreasonably refusing to pay Plaintiff's claim, and related claims and/or similar claims, with the knowledge that Plaintiff's claim and similar claims are payable and with the intent of boosting profits at Plaintiff's and other claimants' expense; and

I. Consciously and unreasonably failing to follow the terms of the Plan and applicable regulations governing the administration of claims, and the review of denied claims.

68.    As a result of Defendants' breaches of fiduciary duty, Plaintiff has been harmed, and the Defendants have been permitted to retain assets and generate earnings on those assets to which Defendants were not entitled.

**COMPLAINT**                                                                                    **CASE NO.**

69.     Plaintiff further requests judgment permanently enjoining Defendants from using level of care guidelines that fall below reasonable standards in the medical community, either as written or as applied, or both. In addition, Plaintiff seeks appropriate equitable relief from all Defendants, and each of them, including an order by this Court that, based upon principles of waiver and/or estoppel, Plaintiff is entitled to benefits in the amount of the cost of L.M.'s treatment at New Haven and ROOTs. In addition, Plaintiff seeks disgorgement of profits, make-whole relief, and that Plaintiff be placed in the position that she would have been in had she been paid the full amount of benefits to which she is entitled, including, without limitation, interest, attorneys' fees and other losses resulting from Defendants' breach.

### PRAYER FOR RELIEF

### AS TO ALL DEFENDANTS

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

70.     Declare that Defendants, and/or each of them, violated the terms of the Plan by failing to provide mental health benefits;

71.     Order Defendants, and/or each of them, to pay the mental health benefits due, together with prejudgment interest on each and every such benefit payment through the date of judgment at the rate of 9% compounded;

72.     Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. Section 1132(g);

73.     Order Defendants, and/or each of them, to cease using acute criteria to evaluate claims involving sub-acute mental health treatment;

74.     Order that, to the extent Defendants evaluate mental health claims using level of care guidelines, that they use publicly available level of care guidelines;

75.     Order that, to the extent Defendants use level of care guidelines to evaluate mental health claims, that Defendants provide copies of the guidelines to all claimants whose claims are denied, along with the specific section(s) of the guidelines it relied upon;

**COMPLAINT**                                                                                                 **CASE NO.**

76. Order that each fiduciary found liable for breaching his/her/its duties to disgorge any profits made through the denial of medically necessary claims through the use of inconsistent care guidelines. This includes, but is not limited to, any violation of ERISA §§ 404 and 406;

77. For appropriate equitable relief pursuant to 29 U.S.C. §§ 1132(a)(2) and (a)(3), including but not limited to, a declaration of Plaintiff's rights to a full and fair review under ERISA, and a declaration of Plan participants' and beneficiaries' rights to a full and fair review;

78. For surcharge relief;

79. An injunction against further denial of Plaintiff's benefits pursuant to 29 U.S.C. §§ 1132(a)(3);

80. Provide such other relief as the Court deems equitable and just.

Dated: August 4, 2026

Respectfully submitted,

**DL LAW GROUP**

By: */s/ David M. Lilienstein*
David M. Lilienstein
Katie J. Spielman
William Bandettini
Attorneys for Plaintiff, M.R.

**COMPLAINT**                                                                 **CASE NO.**